# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**ALBERT T. OWENS,**

**Plaintiff,**

**vs.**                                                    **Case No. 4:18cv422-RH-MAF**

**CAPTAIN TOWNSEND, et al.,**

**Defendants.**

_____/

## SECOND REPORT AND RECOMMENDATION[1]

Pending in this case is a motion filed by Defendants Smith, Edwards, and Townsend which requests that Plaintiff's in forma pauperis status be revoked and this case dismissed or, alternatively, Defendants' seek summary judgment in their favor.  ECF No. 96.  Defendants Reed, Cooks, and Graham filed a separate motion, ECF No. 119, requesting the same relief.

In general, Defendants argue that Plaintiff did not fully disclose his litigation history, that he was not in imminent danger at the time of filing his

_____

[1] A Report and Recommendation was previously issued, ECF No. 7, concerning Plaintiff's motion for a temporary restraining order, ECF No. 4.

amended complaints, that he "failed to provide a constitutional violation

against" Defendants Smith and Cooks, and Plaintiff is not entitled to

compensatory or punitive damages pursuant to 42 U.S.C. § 1997e(e).

ECF No. 96 at 1-2; ECF No. 119 at 1-2.

The pro se Plaintiff was advised of his obligation to respond to the

two motions, and he filed his opposition to the first motion on March 2,

2020.  ECF No. 106.  On April 16, 2020, Plaintiff filed a supplement to his

response, ECF No. 116, which will also be considered as Plaintiff was

given permission to do so.[2]  *See* 115.  Plaintiff filed his opposition to the

second motion on June 11, 2020, ECF No. 123, and the motions are ready

for a ruling.

## I.     Relevant Procedural History[3]

Plaintiff filed his initial complaint, ECF No. 1, on September 7, 2018.

Plaintiff was then incarcerated at Madison Correctional Institution.  He said

that he had not filed any other actions concerning the same or similar facts/

---

[2] Plaintiff's motion to strike Defendants' motion, ECF No. 107, was denied.  ECF No. 110.  Notably, Defendants filed amended copies of two exhibits, ECF No. 109, and those have been considered in place of the original Exhibits A and D submitted with the first summary judgment motion, ECF No. 96.

[3] Plaintiff's third amended complaint, ECF No. 79, named eight persons as Defendants.  Service has not yet been carried out as to Defendants Collins and Williams.  *See* ECF No. 88, 97-98, 100, and 112.

issues in state court, but he identified case number 4:18cv315-WS-GRJ as

a prior federal court action dealing with the same or similar events.  ECF

No. 1 at 5.  He indicated case number 4:18cv315-WS-GRJ was still

pending at that time.  *Id.*  Additionally, Plaintiff identified the following cases

as having previously been dismissed on grounds that would count as a

"strike" under 28 U.S.C. § 1915(g): (1) case number 2:13cv14228 was

dismissed in the Southern District of Florida for failure to state a claim; (2)

case number 13-149188 was dismissed by the Eleventh Circuit as

frivolous; (3) case number 13cv14061 was dismissed in the Southern

District of Florida for failure to state a claim.  ECF No. 1 at 6-9.  Plaintiff did

not list each and every case he filed, saying that he could not recall them

due to a neurological injury,[4] but he listed at least nine other cases and

advised that he had previously "filed numerous" cases in both state and

federal court.  *Id.* at 7-9.  His complaint alleged that he was "in imminent

danger or being seriously physically injured" because he had refused to

"withdraw any of his complaints as ordered."  *Id.* at 14.

---

[4] Plaintiff's complaint alleged that he suffers from "an epileptic grand mal seizure disorder."  ECF No. 1 at 10.

Plaintiff's complaint was reviewed and deemed sufficient for service. ECF Nos. 6, 8.  However, just after a notice of appearance was filed, ECF No. 29, Plaintiff requested leave to amend his complaint.  ECF No. 30. That motion was filed on December 18, 2018, ECF No. 30, approximately a week after Plaintiff filed a notice of change of address, ECF No. 28.  His motion was granted, ECF No. 33, and his first amended complaint, ECF No. 31, which was filed on December 17, 2018, became the operative pleading.[5]

Plaintiff's amended complaint asserted that he was still incarcerated at Madison Correctional Institution at that time.  ECF No. 31 at 2. However, the envelope used to mail the amended complaint listed his address as being at Walton Correctional Institution.  *Id.* at 21.  Once again, Plaintiff acknowledged the prior federal case he had filed which was based on the same or similar facts and issues as this case.  *Id.* at 4.  Plaintiff

---

[5] In the interim, Plaintiff had filed a motion requesting a temporary restraining order, ECF No. 4, ten days after initiating this case.  The Report and Recommendation entered on September 21, 2018, recommended that the motion be denied because Plaintiff had not demonstrated irreparable injury.  ECF No. 7.  United States District Judge Robert L. Hinkle accepted the Report and Recommendation and denied Plaintiff's motion, ECF No. 4, noting specifically that Plaintiff was requesting that Defendants be directed to comply with the Constitution, but they "already have an obligation to comply with the Constitution."  ECF No. 38 at 1.

acknowledged his "numerous prior" cases and listed the same three cases dismissed either as frivolous or for failure to state a claim.  *Id.* at 5-8.  He alleged he was "currently in disciplinary confinement in Madison Correctional Inst. in imminent danger of being removed from his cell . . . to be beaten, punched, kicked and sprayed with chemical agents for not withdrawing his sexual abuse complaint."  *Id.* at 12-13.

After Defendants filed a motion to dismiss, ECF No. 32,[6] Plaintiff again sought permission to file another amended complaint.  ECF No. 41.  That request was granted, ECF No. 43, and Plaintiff's second amended complaint, ECF No. 42, filed on March 20, 2019, became the operative pleading.

Plaintiff listed his address in this version of his complaint as Walton Correctional Institution, and the persons named as Defendants continued to be persons employed at his former facility - Madison Correctional Institution.  ECF No. 42 at 2-3.  This version of Plaintiff's complaint greatly increased the number of cases listed in Section IV of the complaint form, "previous lawsuits," *id.* at 4-37, although Plaintiff could not recall most of

_____

[6] That motion succinctly listed the many cases Plaintiff had filed in state and federal court.  ECF No. 31 at 3-8.

the information requested.  He essentially included the information which

had been listed by opposing counsel in a prior motion to dismiss (ECF No.

32).  *Id.* at 37.

When granting Plaintiff's motion to file a second amended complaint,

the Order denied Defendants' motion to dismiss the first amended

complaint, ECF No. 32, as moot.  ECF No. 43.  Defendants were given a

deadline to "file a responsive pleading to Plaintiff's complaint."  *Id.* at 3.

Defendants objected to that Order, *see* ECF No. 44, but the objections

were overruled.  ECF No. 45.  As relevant to the instant motions, Judge

Hinkle noted that Plaintiff had provided sufficient information to show he

had three or more "strikes" under § 1915(g).  *Id.* at 2.  Judge Hinkle said:

> It may be, as the defendants allege, that the plaintiff has
> abused the judicial process repeatedly in past cases. The
> number of cases he has filed suggests that is so. But dismissal
> of this new case in these circumstances for failure to list all the
> prior lawsuits—coupled with a statement that there were
> unlisted prior lawsuits—is not mandatory. If the plaintiff's
> allegation of imminent danger is incorrect, leave to proceed *in
> forma pauperis* may be revoked, and the case may be
> dismissed. If the plaintiff's substantive allegations are
> unfounded, judgment on the merits may be entered for the
> defendants in due course.

ECF No. 45 at 2.  Judge Hinkle concluded that this case should not be

dismissed "solely because the plaintiff filed other claims that were not all

identified in the first amended complaint." *Id.* Defendants then filed an answer, ECF No. 46, and discovery began. ECF No. 49.

Once again, Plaintiff requested leave to file a third amended complaint, ECF No. 78, advising that through discovery, he determined that several persons should have been named as defendants, and he wished to delete his claim against Defendant Thompkins. Plaintiff's motion was granted, ECF No. 81, and the third amended complaint, ECF No. 79, became, and remains, the operative pleading. At the time of filing on September 30, 2019, Plaintiff remained housed at Walton Correctional Institution. *Id.* at 2. Plaintiff's third amended complaint includes numerous pages listing his lengthy litigation history. *Id.* at 4-37.[7]

The extended discovery period has now closed. Defendants filed the first motion for summary judgment in February 2020, ECF No. 96, and the second motion in May 2020, ECF No. 116. Plaintiff has since been transferred to the Northwest Florida Reception Center Annex, ECF No. 99, and as of his latest filing, ECF No. 123, is still there.

---

[7] Plaintiff's third amended complaint consists of 45 pages, but only 8 of those pages includes the factual allegations, statement of claims, and requests for relief. ECF No. 79.

## II.    Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Thus, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553.  The non-moving party must

then show[8] the court "that there is an absence of evidence to support the

nonmoving party's case."  *Id.* at 325, 106 S. Ct. at 2554.

An issue of fact is "material" if it could affect the outcome of the case.

Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th

Cir. 2004) (citations omitted).  A party must show more than the existence

of a "metaphysical doubt" regarding the material facts, Matsushita Elec.

Indus. Co., LTD. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct.

1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is

insufficient.  The court must decide "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law."  Hickson Corp.,

---

[8] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

Moreover, Plaintiff's third amended complaint is sworn under penalty of perjury, *see* ECF No. 79 at 42-43, as are his responses to the summary judgment motions. ECF No. 123 at 19; ECF No. 106 at 16.  Statements made by a plaintiff in a verified complaint, sworn response to a motion for summary judgment, or sworn affidavit are properly treated as testimony in ruling on a summary judgment motion.  Sears v. Roberts, 922 F.3d 1199, 1206 (11th Cir. 2019) (citing United States v. Stein, 881 F.3d 853, 857 (11th Cir. 2018) (noting that "a litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment.")).

357 F.3d at 1260 (quoting <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)).

"Summary judgment is not a time for fact-finding; that task is reserved for trial." <u>Sconiers v. Lockhart</u>, 946 F.3d 1256, 1263 (11th Cir. 2020) (citing <u>Tolan v. Cotton</u>, 572 U.S. 650, 655-57, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014)). Specific facts pled in a sworn complaint[9] and supported by record evidence must be credited to the Plaintiff, and all reasonable inferences must be resolved in the light most favorable to the nonmoving party. <u>Sconiers</u>, 946 F.3d at 1262-63. However, "when competing narratives emerge on key events, courts are not at liberty to pick which side they think is more credible." 946 F.3d at 1263. On the other hand, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." <u>Matsushita Elec. Indus. Co.,</u> 475 U.S. at 587 (internal quotation marks omitted) (quoted in <u>Ricci v. DeStefano</u>, 557 U.S. 557, 586, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009)). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but

---

[9] Plaintiff's swore under penalty of perjury the factual allegations in his third amended complaint were "true and correct." ECF No. 79 at 43.

to determine whether there is a genuine issue for trial." <u>Anderson</u>, 477

U.S. at 249, 106 S. Ct. at 2511 (quoted in <u>Sears v. Roberts</u>, 922 F.3d 1199,

1205 (11th Cir. 2019)).

## III.   Relevant Evidence

Defendants submitted evidence which reveals that Plaintiff was

transferred to Madison C.I. on March 28, 2018.  Ex. C. (ECF No. 96-3).  He

remained there for eight months until he was transferred to Walton C.I. on

November 28, 2018.  *Id.*

Upon his arrival at Madison C.I., Plaintiff was placed in administrative

confinement from March 30, 2018, through April 27, 2018.  Ex. E (ECF No.

96-5 at 1).  Plaintiff was then moved to open population and, on May 2,

2018, was assigned to work as a "houseman."  *Id.*  On June 27, 2018,

Plaintiff was again placed in administrative confinement where he remained

until July 19, 2018, when he was placed in disciplinary confinement.  *Id.*

On September 15, 2018, he was returned to open population, but that

lasted for just a few weeks.  *Id.*  On October 3, 2018, Plaintiff was again

placed in administrative confinement.  *Id.*  On October 11, 2018, he was

returned to open population.  *Id.*  Once again, that did not last long and he

was returned to administrative confinement on October 24, 2018.  ECF No.

96-5 at 2.  On October 30, 2018, Plaintiff was moved to disciplinary confinement where he remained until he was transferred away from Madison C.I.  *Id.*  It appears that after he arrived at Walton C.I., he was placed in open population.[10]  *Id.*

## IV.   Analysis

### A.   Failure to disclose litigation history

Defendants contend that "Plaintiff failed to provide full disclosure of the required information regarding his prior litigation history."  ECF No. 96 at 7; ECF No. 119 at 7.  Defendants point out that "Plaintiff provided none of the required candor regarding his general litigation history," and argue that it "is particularly egregious behavior considering the magnitude of Plaintiff's cases, and the fact that Plaintiff has been sanctioned for his failure to disclose his prior litigation history in the past."  *Id.*

In each complaint Plaintiff filed in this case, he noted that he had previously filed numerous cases.  He did not attempt to hide the fact that he was litigious, even though it was not known precisely how many cases he had filed.  Precision, however, is not required.  The purpose of the

---

[10] The record reveals Plaintiff was placed in open population on December 6, 2019, and remained there through June 2019.  ECF No. 96-5 at 2.

questions on the complaint form are designed to elicit information on three issues: (1) does the plaintiff have litigation experience; (2) has the plaintiff already litigated this claim; and (3) does he have "three strikes."  Knowing that a prisoner has filed many cases or no cases aids the Court in determining how much guidance is appropriate and necessary.  Knowing that a prisoner plaintiff has filed a dozen or so cases is beneficial to a court, but it makes little difference to know that he has filed as many as fifty cases.  Regardless, the factual allegations of a complaint will be reviewed in the same way - has the plaintiff presented sufficient facts to state a plausible claim for which relief could be granted.

In this case, in every version of his complaint, Plaintiff made known that he had considerable litigation experience and had filed more cases than he could remember.  It does not appear that he was attempting to be secretive or manipulative.  Plaintiff has declared as much, stating that the failure to disclose all cases was not malicious, but because he "could not remember" all of them and no longer possessed documents related to all of those cases.  ECF No. 116 at 1.

Plaintiff has provided a listing of his litigation history in both his second and third amended complaints; the listings are longer than the

complaints themselves.  Here, the fact that he did not list every single case, in light of the other disclosures he did make, is not an abuse of the judicial process.  The motions for summary judgment based on that argument should be denied.

### B.   Imminent Danger

Because Plaintiff had accumulated at least three dismissals which count as "strikes" under 28 U.S.C. § 1915(g), he could not proceed in this case with in forma pauperis status unless he met the "imminent danger" exception of § 1915(g).[11]  Daker v. Robinson, 802 F. App'x 513, 515 (11th Cir. 2020) (agreeing with district court that prisoner "was ineligible to proceed IFP").  It is been well established for over twenty years that allegations of "past harm" are "insufficient to meet the imminent-danger requirement."  Medberry v. Butler, 185 F.3d 1189, 1193 (11th Cir. 1999) (cited in Daker, 802 F. App'x at 515).  A prisoner must allege plausible

---

[11] "The full text of the three-strikes provision reads: 'In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding [in forma pauperis] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.'"  28 U.S.C. § 1915(g) (quoted in Lomax v. Ortiz-Marquez, 140 S. Ct. 1721, 1724 (2020) (holding that a dismissal for "failure to state a claim counts as a strike, whether or not with prejudice")).

facts that are not merely speculative or "too attenuated" from the basis for the complaint.  802 F. App'x at 515 (citing to Pettus v. Morgenthau, 554 F.3d 293, 297 (2d Cir. 2009) ("[T]he statute requires that the prisoner's complaint seek to redress an imminent danger of serious physical injury and that this danger must be fairly traceable to a violation of law alleged in the complaint.")).  The facts must not be asserted in a vague or "conclusory manner" and they must show that "at the time he filed his complaint," the plaintiff was "in imminent danger."  O'Connor v. Sec'y, Fla. Dep't of Corr., 732 F. App'x 768, 770-771 (11th Cir. 2018).

Here, Defendants contend that "Plaintiff has not shown that he is in imminent danger."  ECF No. 96 at 13; ECF No. 119 at 13.  Defendants argue that "Plaintiff has not been in imminent danger for the majority of this proceeding, is not in imminent danger now, and has removed the allegation that he is imminent danger from his latest amended complaints."  ECF No. 96 at 14; ECF No. 119 at 14.

Plaintiff's initial complaint alleged that he turned in "a sexual abuse complaint" to Defendant Smith to be mailed for him.  ECF No. 1 at 10.  He claimed that Defendant Smith read his complaint then threw it back into his cell, refusing to mail it as she had previously threatened to do, and walked

away.  *Id.*  Shortly thereafter, a number of prison officials came to his cell

and, first, threatened to spray him with chemical agents, then followed

through on their threat.  *Id.* at 10-11.  Plaintiff claimed he was sprayed

unnecessarily and excessively, even though he was not being disruptive.

*Id.*  He also said that the use of chemical agents was in violation of a

known medical restriction and carried out as an act of retaliation.  *Id.*

Plaintiff further alleged that Defendant Graham told him the he would

"continue to be gassed if he continue[d] to make sexual abuse allegations

against staff."  *Id.* at 11.

Undeterred by the threat, Plaintiff obtained a pen and another

grievance form "from the next cell and submitted sexual abuse complaints

against [Defendants] Cooks, Smith, and Robinson."  ECF No. 1 at 11.  The

complaints apparently were received and Plaintiff was taken to medical for

an examination in connection with his grievance.  *Id.* at 12.  While being

escorted, Captain Terry suggested to Plaintiff that the officers who were the

subject of his grievances "held the keys to his cell" and could "move him

from his cell at will."  *Id.*  Sergeant Oliver also threatened Plaintiff "with

physical violence for making sexual abuse allegations against" the three

other officers.  *Id.*  Sergeant Oliver allegedly told Plaintiff that he would

suffer "physical injury when he returns to general inmate population."  *Id.*

The next day Plaintiff filed a grievance on Sergeant Oliver.  *Id.*  Later

that evening, Plaintiff was removed from his cell at the instruction of

Captain Terry and told to wait in the lobby of the medical department.  *Id.* at

12.  While waiting alone, "several unidentifiable correctional officers

entered the front door of the medical lobby threatening to kill" him if he did

"not stop filing grievances and withdraw his sexual abuse complaints."  *Id.*

at 12-13.  Plaintiff alleged that he was "escorted to the medical department

for the sole purpose of" being threatened.  *Id.* at 13.

Two days later, Plaintiff requested a grievance form from Officer

Robinson, but his request was denied because Plaintiff had previously filed

a complaint against Robinson.  *Id.*  Two days later, Plaintiff was being

moved to another dormitory.  *Id.*  During his escort, Defendant Edwards

took Plaintiff "behind L-Dorm off camera," where he was punched several

times while his hands were "handcuffed behind his back."  *Id.*  Plaintiff

alleged he was threatened that it would be "harder next time if" Plaintiff did

not withdraw his complaints.  *Id.*  Plaintiff said Defendant Edwards locked

him in "a cage" for approximately six hours "without any water or

penological justification." *Id.* On July 19, 2018, Plaintiff alleges that Defendant Cooks told him that he was in for "a serious ass whipping" if he did not "withdraw his sexual abuse complaints." *Id.*

Plaintiff alleged that all eight named Defendants had "unlimited authority to remove" him from his cell, and he feared that even though he was then housed in disciplinary confinement, that he was "in imminent danger of being removed . . . and severely beaten for not withdrawing his sexual abuse complaints against staff as ordered." *Id.* at 13.  Plaintiff further said that under the circumstances, the grievance system was unavailable to him due to "reprisal, harassment, physical and sexual abuse." *Id.*

Plaintiff's allegations provide a sufficient basis to support his claim that he was in imminent danger of physical abuse from a number of prison officials.  Plaintiff's allegations were fact specific and not vague or conclusory.  Construing the complaint liberally and "as a whole," *see* <u>Daker v. Bryson</u>, 784 F. App'x 690, 692 (11th Cir. 2019), it is concluded that Plaintiff stated a plausible claim and a basis for asserting imminent danger in light of the threats and prior assaults on Plaintiff at the time of case initiation.  The complaint was not based solely on "past harm."

Case No. 4:18cv422-RH-MAF

The real issue presented by Defendants is whether Plaintiff's in forma pauperis status should be revoked and the complaint dismissed because Plaintiff was not in imminent danger when he filed the amended complaints.  ECF No. 96 at 18.  Defendants correctly point out that Plaintiff did not face imminent danger from any named Defendant when the first, second, or third amended complaints were filed because he was not physically located with any of them.  *Id.*; *see also* ECF No. 119 at 14-18. Defendants have shown that Plaintiff was "transferred away from Madison Correctional Institution and all Defendants on November 28, 2018."  ECF No. 96 at 14 (citing to Ex. C [ECF No. 96-3]).

Nevertheless, he was located at Madison C.I. at the time of case initiation on September 7, 2018, and at the time he was granted in forma pauperis status pursuant to § 1915(g).  ECF No. 5; ECF No. 96-3.  Plaintiff was also still housed there when an Order was issued in October 2018 directing service of his complaint.  ECF No. 8.  Plaintiff was not there, however, by the time he filed his motion requesting leave to file the first amended complaint.  ECF No. 30.  Accordingly, Defendants argue that to permit Plaintiff to proceed with this case even though his second and third amended complaints dropped allegations of "imminent danger would

frustrate the purpose of the three-strikes provision."  ECF No. 96 at 18;
ECF No. 119 at 18.

The reality of prison litigation is this - a prisoner has a constitutional
right of access to the courts and to seek redress for grievances.  A prisoner
may file a civil rights complaint in federal court alleging constitutional
violations, but after providing his complaint to prison officials to mail for
him, the prisoner has no control over what happens next.  He cannot
determine when a court will receive his complaint, review his complaint, or
rule on an in forma pauperis motion.  He also cannot control whether prison
officials will keep him in a specific institution or transfer him.

The fact that a prisoner is transferred to a different institution during
the course of litigation generally means that the prisoner is no longer able
to seek injunctive relief; a transfer moots such a request.  Wahl v. McIver,
773 F.2d 1169, 1173 (11th Cir. 1985) (per curiam) (stating that a prisoner's
past exposure to sub-par conditions in a prison "does not constitute a
present case or controversy involving injunctive relief")); Dunn v. Warden
Ware State Prison, 644 F. App'x 898, 900, n.2 (11th Cir. 2016) (noting that
because the prisoner was "no longer housed in either Ware State Prison or
Calhoun State Prison, his claims for injunctive relief against the prison

officials there are moot."); Clas v. Torres, 549 F.App'x 922, 923 (11th Cir.

2013) (citing Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1988));

see also Zatler v. Wainwright, 802 F.2d 397, 399 (11th Cir. 1986) (relying

on Wahl and holding that the prisoner's "claims for declaratory and

injunctive relief are now moot" in light of his transfer to another prison and

then his subsequent release).  Thus, a prisoner's transfer will impact a

request for injunctive relief related to a claim of imminent danger.

However, a prisoner's subsequent transfer does not alter past history.

Subsequent transfer does not erase the danger a plaintiff alleged fearing at

the time the case was filed.  Here, Plaintiff's original complaint sufficiently

alleged a factual basis to support his contention that he faced and feared

imminent danger from the Defendants while housed at Madison C.I.,

Plaintiff's location at the time of case initiation.  ECF No. 1 at 13.

The relevant statute states that a prisoner with "three strikes" may not

bring an action with in forma pauperis status "unless the prisoner is under

imminent danger of serious physical injury."  28 U.S.C. § 1915(g).  The

phrase "is under imminent danger" is not modified or explained in the

statute, but "is" and "imminent" suggest a present and future danger.

The Eleventh Circuit Court of Appeals clarified what must be shown to grant an inmate in forma pauperis status under § 1915(g) in Medberry v. Butler, 185 F.3d 1189 (11th Cir. 1999).  Examining case law from other circuits, the court noted that in Gibbs v. Roman, 116 F.3d 83 (3rd Cir.1997), the Third Circuit held "that the proper focus when examining an inmate's complaint filed pursuant to § 1915(g) must be the imminent danger faced by the inmate at the time of the alleged incident, and not at the time the complaint was filed."  *Id.* at 86 (quoted in Medberry, 185 F.3d at 1192).  "On the other hand, the Eighth Circuit held in Ashley v. Dilworth, 147 F.3d 715 (8th Cir.1998), that 'an otherwise ineligible prisoner is only eligible to proceed IFP if he is in imminent danger at the time of filing.'" Medberry, 185 F.3d at 1192.  Similarly, the Fifth Circuit held that a prisoner could proceed with his action "only if he is in imminent danger at the time that he seeks to file his suit in district court or seeks to proceed with his appeal or files a motion to proceed IFP."  Baños v. O'Guin, 144 F.3d 883, 884 (5th Cir. 1998) (quoted in Medberry, 185 F.3d at 1193).

The Eleventh Circuit agreed "with both the Fifth and the Eighth Circuits that the clear language of § 1915(g) establishes that the Third Circuit's approach is incorrect."  185 F.3d at 1193.  "Congress' use of the

present tense in § 1915(g) confirms that a prisoner's allegation that he

faced imminent danger sometime in the past is an insufficient basis to allow

him to proceed in forma pauperis pursuant to the imminent danger

exception to the statute." *Id.*

Although the court decided the standard to be used in evaluating

imminent danger, the court nevertheless concluded that the prisoner,

Medberry, had not presented sufficient allegations to proceed because the

threat of harm "had ceased prior to the filing of his Complaint." *Id.*

Specifically, Medberry had alleged that his life was in danger from other

inmates if he were housed in general population. *Id.* at 1191. Prison

officials, however, put him in general population and, as predicted,

Medberry was subsequently abused, harassed, and physically assaulted

by members of the "Latin Kings" gang. *Id.* Medberry reported the incident

to prison officials and he was placed in administrative confinement that

same day. *Id.* Two months after the assault, and after exhausting

administrative remedies, Medberry filed suit against the officers for

deliberate indifference in failing to protect his safety. *Id.*

The district court concluded that he failed to allege "he was under

imminent danger of serious physical injury." *Id.* The Eleventh Circuit

affirmed, finding that there were no allegations presented in the complaint to show "that he was in jeopardy of any ongoing danger."  185 F.3d at 1193.  Furthermore, the court held that the district court did not err in denying Medberry the opportunity to amend his complaint.  *Id.*  Two obvious reasons support that conclusion.  First, the prisoner was immediately placed in administrative confinement and actions were taken to protect his safety after he reported the incident.  Second, shortly after initiating his case, Medberry was transferred again to another facility.  The Eleventh Circuit found that "allowing Medberry to amend his Complaint would have been futile because he could not have alleged that he was in imminent danger of serious physical injury by being placed in the general population at the Everglades Correctional Institute."  *Id.* at 1193.

The distinction between Medberry and this case is that Plaintiff was still located at Madison C.I. at the time of case initiation, when his in forma pauperis motion was granted, and when his complaint was deemed sufficient to proceed.  Plaintiff alleged facts which, liberally construed, demonstrated an ongoing danger to his safety and the threat of harm had not ceased.  No actions were taken to protect him because he was unable to report the threats through the grievance process.

Another case which addressed the "imminent danger" standard related to a prisoner's transfer is <u>Owens v. Schwartz</u>, 519 F. App'x 992 (11th Cir. 2013).[12]  There, the plaintiff alleged he had been "assaulted by his cell mate, and various corrections officers refused to intervene." <u>Owens</u>, 519 F. App'x at 994.  Plaintiff alleged that "officers ignored his specific requests, both before and after the assault, for protective custody based on threats he had received from his cell mate." *Id.* at 994. However, the plaintiff was transferred to a different institution "after filing his complaint." *Id.*

Relying on <u>Medberry</u>, the Eleventh Circuit concluded that "even if he had been in imminent danger of serious physical injury from his cell mate and the failure of prison officials to protect him, that danger had passed." *Id.* "His allegations of attacks at the facility to which he was transferred were insufficient to invoke the 'imminent danger' exception, because he also asserted that prison officials there took action to protect him." *Id.*

Although the <u>Owens</u> case presents a closer question because the prisoner was transferred after he filed his complaint, it can still be

---

[12] The plaintiff in <u>Owens v. Schwartz</u>, 519 F. App'x 992 (11th Cir. 2013), was Kevin Owens and is not the same Plaintiff (Albert T. Owens, Jr.) in this case.

distinguished.  Judicial notice is taken that after the plaintiff in Owens

initiated his case, he was directed to file a complaint on the proper form

and file an in forma pauperis motion.  *See* Owens v. Schwartz, case #

3:12cv312-LAC-EMT, ECF No. 4.[13]  Plaintiff subsequently filed two notices

of change of address and an emergency motion for temporary restraining

order, ECF Nos. 5, 6, and 8, but he did not file a complaint or in forma

pauperis motion by the deadline provided.  *See* ECF No. 9 of that case.

Magistrate Judge Elizabeth Timothy then entered an Report and

Recommendation, ECF No. 9, after reviewing Plaintiff's case initiating

documents which alleged that defendants had not provided a safe and

secure environment for him at Okaloosa Correctional Institution.  *Id.*  It was

concluded that plaintiff's allegations concerned past harms and that due to

plaintiff's transfer, the future imminent danger had "been eliminated."  ECF

No. 9, pg. 3.

Here, Plaintiff still faced ongoing harm at the time his complaint was

filed, and at the time service of process was directed.  The future danger to

Plaintiff had not passed until after service of process was carried out.

---

[13] Because Owens was filed in the Northern District of Florida, the Court is able to take judicial notice of the procedural status of that case.  The information provided herein is taken from the Report and Recommendation, ECF No. 9, entered in Owens.

Furthermore, Plaintiff has pointed to the more recent case of <u>Barber</u>

<u>v. Krepp</u>, 680 F. App'x 819 (11th Cir. 2017), to show that his subsequent

transfer is not fatal to this case.  ECF No. 123 at 11.  There, the Eleventh

Circuit held that the prisoner's allegations were "sufficient to establish an

'imminent danger of serious physical harm,' and it was an abuse of

discretion for the district court to conclude otherwise."  <u>Barber</u>, 680 F. App'x

at 821.  The court noted that its "conclusion [was] not altered by the fact

that, during the pendency of this appeal, Barber [had] been transferred

from the prison where the past attacks allegedly occurred."  680 F. App'x at

821.

However, the court went on to explain that Barber had claimed "that

his harassment [was] the result of a conspiracy that reaches beyond Autry

State Prison to include, among others, the statewide Georgia Department

of Corrections and the Board of Pardons and Parole."  *Id.* at 821.  As a

result, the court found it was "not clear that merely transferring him from

one prison to another within the Georgia penal system will end the alleged

retaliation against him."  *Id.*  Moreover, the court stated in dicta:

> For the same reason, we reject the suggestion of the United
> States, as amicus curiae, that Barber's transfer moots this
> case. That being said, if it later becomes clear that the transfer

has ended any risk of retaliation, the district court would be
obligated to reconsider this issue.

680 F. App'x at 821, n.3.  That comment suggests that a transfer *could*

require a court to "reconsider" the imminent danger issue.  However,

considering that it was made in dicta, in a non-published case, Barber v.

Krepp does not require granting Defendant's request to dismiss this case.

Section 1915(g) requires that at the time the action is filed, a prisoner

with "three strikes" must be facing "imminent danger of serious physical

injury."  28 U.S.C. § 1915(g).  The statute does not specify that imminent

danger must continue throughout the duration of the litigation.  If a judicial

rule emerged which required that a prisoner's case and request for

monetary damages be dismissed as moot if the prisoner were

subsequently transferred, it is likely that no prison civil rights case would

ever be litigated.[14]  Prison officials could simply transfer a prisoner to avoid

litigation.  Indeed, the docket for this case reveals that summonses were

served on the named Defendants in late October 2018, and executed

summonses were filed in this Court on November 2, 2018.  ECF Nos. 22-

---

[14] Notably, even a prisoner's death does not moot a case or request for monetary
damages. *See* Valdes v. Crosby, 390 F. Supp. 2d 1084, 1101 (M.D. Fla. 2005), *aff'd*,
450 F.3d 1231 (11th Cir. 2006).  Inmate "Valdes died because of a beating administered
in violation of the Eighth Amendment" but his case proceeded.

27.  Coincidentally or not, Plaintiff was transferred away from Madison C.I. and the named Defendants on November 28, 2018.  That Plaintiff was transferred during the pendency of this case does not mean Plaintiff was not facing "imminent danger of serious physical injury" at the time the case was filed.

More importantly, the "imminent danger" exception of § 1915(g) should be limited to its statutory purpose.  The statute provides an inmate with "three strikes" access to the courts by allowing in forma pauperis status.  As the Barber court noted, "[section] 1915(g) concerns only a threshold procedural question—whether the filing fee must be paid upfront or later. Separate PLRA provisions are directed at screening out meritless suits early on." Barber, 680 F. App'x at 822 (quoting Andrews v. Cervantes, 493 F.3d 1047, 1055 (9th Cir. 2007)).  It should be deemed to operate as a door opening mechanism.  The in forma pauperis status should not, however, control whether a case should continue.  It is recommended that the motions for summary judgment be denied as to this argument.

### C.   Defendants Smith, Townsend, and Edwards

Defendants Smith, Townsend, and Edwards contend that Plaintiff did

not make allegations of imminent danger of future harm from them after

filing the original complaint.  ECF No. 96 at 19-20.  Defendants contend

that the claims are based on "past actions which" cannot justify application

of the imminent danger exception.  *Id.* at 20.  Defendants further argue that

Plaintiff could not have been in imminent danger when he was housed in

confinement rather than open population because he admitted in a

deposition related to another case that he felt "safe" while housed in

confinement.[15]  *Id.* at 21.

To the degree Defendants seek dismissal of this case and to revoke

Plaintiff's in forma pauperis status based on these arguments, ECF Nos. 96

at 18-22, the motion should be denied.  Plaintiff sufficiently alleged

imminent danger at the time of case initiation.  ECF No. 1.  His third

amended complaint was filed in late September 2019, well after the events

---

[15] Considering that the deposition was related to a different case, 4:18cv315-RH-CAS, *see* ECF No. 109-2 at 2, and Plaintiff's statements about feeling safe were made in the context of feeling safe enough to report an instance of alleged abuse, *see* ECF No. 109-2 at 27-28, the statements are not controlling.  Those statements were also directed to the time frame of June 2018, *id.*, a month prior to the events at issue in this case.  Absent something more, Plaintiff's deposition testimony does not require the dismissal of this case for lack of imminent danger.

at issue.  However, Plaintiff's subsequent transfer did not eliminate the

basis for his claims against the Defendants.

Defendant Smith also seeks summary judgment in his favor,

asserting that "Plaintiff cannot meet the required elements to demonstrate

that the Defendant interfered with his access to the courts in violation of his

rights under the First Amendment."  ECF No. 96 at 22.  Defendant

contends that Plaintiff cannot show "actual injury" when Defendant

allegedly refused to accept a complaint to be mailed to the U.S. Attorney's

Office because Plaintiff was eventually able to pursue his complaint at a

later time in another civil rights action.  *Id.* at 24.

It is well established that inmates have a right to access the courts

under the First Amendment.  Bounds v. Smith, 430 U.S. 817, 97 S.Ct.

1491, 52 L.Ed.2d 72 (1977); Lewis v. Casey, 518 U.S. 343, 116 S. Ct.

2174, 135 L. Ed. 2d 606 (1996).  It is also well established that to succeed

on such a claim, a prisoner must show "actual injury" in that the actions of a

prison official hindered or "impeded the inmate's pursuit of a nonfrivolous,

post-conviction claim or civil rights action."  Al-Amin v. Smith, 511 F.3d

1317, 1332-33 (11th Cir. 2008) (holding prisoner's First Amendment

access to courts claim was insufficient because he did "not identify how

any legal matters specifically were damaged"); *see also* <u>Lewis</u>, 518 U.S. at 354, 116 S. Ct. at 2181.  Here, Plaintiff has not shown "actual injury" and he concedes that point in his response.  ECF No. 106 at 11.  Accordingly, summary judgment is appropriately granted in favor of Defendant Smith as to the access to courts claim.

Notwithstanding, a liberal reading of Plaintiff's complaint reveals another First Amendment claim against Defendant Smith.  Plaintiff alleged that he refused to mail his complaint to a government attorney in violation of his First Amendment rights.  ECF No. 79 at 44.

Beyond accessing the courts, a prisoner has "a First Amendment free speech right to communicate with his attorneys by mail, separate and apart from his constitutional right to access to the courts."  <u>Al-Amin</u>, 511 F.3d at 1334.  "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment."  511 F.3d at 1333 (citing <u>City of Cincinnati v. Discovery Network, Inc.</u>, 507 U.S. 410, 427 (1993)).  Moreover, the "actual injury requirement" which applies to access-to-courts claims does not apply to free speech claims.  511 F.3d at 1334.  Plaintiff's

sworn complaint alleged that he gave a "sexual abuse complaint[16] for mailing to the U.S. Attorney's office" which Defendant Smith improperly read, and then refused to mail.  ECF No. 79 at 38.  Those facts are sufficient to assert a free speech claim which should proceed against Defendant Smith.

### D.    Defendants Reed, Cooks, and Graham

These Defendants also contend that Plaintiff never made any allegations of imminent harm from the Defendants in the operative third amended complaint, nor could he since Plaintiff had been transferred.  ECF No. 119 at 14-19.  For the reasons explained above, this argument should be rejected because Plaintiff sufficiently alleged imminent danger at the time of case initiation.  The relevant question at this point in the litigation is whether any Defendant violated Plaintiff's rights.

---

[16] Defendants provided a transcript of Plaintiff's deposition in which he said that he was attempting to give Defendant Smith "privileged mail" or "legal mail" because he was seeking to mail a complaint to an attorney's office.  ECF No. 109-1 at 19-26.  He contends he was seeking assistance with a possible prosecution.  *Id.* at 25-26.  Under the definition of "legal mail" as specified in the Florida Administrative Code, Plaintiff is correct.  "Legal mail" is defined as "mail to and from the following entities: (a) Municipal, county, state and federal courts. (b) State attorneys. (c) Private attorneys. (d) Public defenders. (e) Legal aid organizations. (f) Agency clerks. (g) Government attorneys." FLA. ADMIN. CODE R. 33-210.102(2).

Defendant Cooks contends that he is entitled to summary judgment because he was "not even on duty on the day at issue." ECF No. 119 at 21. Defendant Cook has provided evidence supporting his assertion that he did not work the day shift on July 8, 2018. *Id.* at 22-23 (citing to Exhibits A-B [ECF Nos. 119-1, 119-2]). *Id.* at 22. Exhibit A is the "daily security roster" for Madison C.I. on Sunday, July 8, 2018. ECF No. 119-1. The document is almost entirely redacted and not readable except for one notation - it indicates that July 8, 2018, was one of Defendant Cooks' "days off." *Id.* at 2. The document is supported by the declaration of Michael Harrell, ECF No. 119-2, who confirms that an incident occurring around 15:00 hours would be during "Day 'B' Shift."

In response, Plaintiff states that Defendant Cooks was on duty on July *9*, 2018, at Madison C.I. "and lied under oath by claiming that he was not present for the incident." ECF No. 123 at 14. Moreover, the third amended complaint alleged that "[o]n July 9, 2018, at approx. 1500 hrs," Defendant Cooks came to Plaintiff's cell along with Defendants Townsend, Graham, and Williams and threatened "to spray Owens with chemical agents for mailing sexual abuse complaints against Cooks." ECF No. 79 at

38.  Because the duty roster for July 8th is not relevant, it provides no basis

to enter summary judgment in favor of Defendant Cooks.

### E.   Compensatory and Punitive Damages

Defendants assert that Plaintiff is not entitled to compensatory or

punitive damages under 42 U.S.C. § 1997e(e).  ECF No. 96 at 26; ECF No.

119 at 23.  Defendants contend that because Plaintiff failed "to state a

physical injury which is greater than *de minimus*," he is not entitled to

anything more than nominal damages.  ECF No. 119 at 23-26.

In response, Plaintiff asserts that he did present sufficient allegations

in his complaint.  ECF No. 123 at 14.  Plaintiff points out that his complaint

alleged respiratory distress from the unnecessary use of chemical agents,

which he also claims was excessive.  *Id.* at 16-17; *see also* ECF No. 79 at

39-40.  Further, he claims that Defendants kept him in his cell even after

spraying him a second time.  ECF No. 79 at 39.  Plaintiff contends he was

not removed for a decontamination shower until he was sprayed a third

time.  *Id.* at 39-40.  Even then, he was not provided "sufficient time to

properly decontaminate" and medical staff did not fully document his

injuries.  *Id.* at 40.  Plaintiff alleged that he was then placed back in that

same cell for approximately three days, causing him to experience a

"burning" pain.  *Id.* at 41.  Thus, Plaintiff contends he sufficiently alleged "physical injury which is greater than *de minimus*."  ECF No. 123 at 14. Moreover, as to Defendant Reed's argument that Plaintiff's medical records do not support his claim of injury, ECF No. 119 at 29, Plaintiff agrees that is so "because medical staff refused to document his injuries and Defendants denied Plaintiff access to the medical department."  ECF No. 79 at 3 (citing to ECF No. 79 at 21, 30).

In a recent case, the Eleventh Circuit clarified that "§ 1997e(e) does not categorically bar prisoners from recovering compensatory or punitive damages for temporary (but greater than de minimis) injuries resulting from the unlawful use of pepper spray against them."  Thompson v. Smith, 805 F. App'x 893, 901 (11th Cir. 2020).  In reviewing facts similar to the ones alleged in this case, the court concluded that a reasonable jury could find that "being pepper sprayed and made to sit with the chemical agents on him for nearly twenty minutes, forced to take an extended shower to allow the chemicals to run into sensitive crevices of his body, and returned to a cell contaminated with pepper spray for the rest of that day and part of the following day—amounts to a greater than de minimis physical injury." Thompson, 805 F. App'x at 901.  The court pointed out that "a plaintiff may

assert an Eighth Amendment violation on the basis that he was unlawfully pepper sprayed."  805 F. App'x at 902.  Such a claim is not categorically barred, nor is a request for compensatory or punitive damages based on "an unlawful pepper spraying," even without lasting or permanent injury.  *Id.* Although "every use of pepper spray" will not give "rise to a 'greater than de minimis' physical injury," a "spraying done sadistically, with no penological justification," crosses the line beyond "a 'routine discomfort' associated with confinement."  *Id.* at 904.  (11th Cir. 2020).

Similar to Thompson, Plaintiff here alleged he was sprayed three times in succession, unnecessarily because he was not creating a disturbance.  He alleged it was excessive and retaliatory.  Plaintiff claimed he was not permitted to properly shower off the chemical agents, and then returned to the contaminated cell for three days.  He alleged burning pain. Pursuant to Thompson, a reasonable jury could conclude that Plaintiff suffered more than a de minimis physical injury and his requests for compensatory and punitive damages should go forward.

## Recommendation

It is respectfully **RECOMMENDED** that Defendant Smith's motion for summary judgment, ECF No. 96, be **GRANTED** as to the First Amendment right of access to courts claim, but otherwise **DENIED** as to the claims against Edward and Townsend, and the remaining First Amendment (free speech) claim against Defendant Smith.  It is further **RECOMMENDED** that the motion for summary judgment, ECF No. 119, filed by Defendants Reed, Cooks, and Graham be **DENIED**, and this case be **REMANDED** for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on August 21, 2020.


 S/     Martin A. Fitzpatrick_____
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ.**

**P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**